Shane E. RICE, Plaintiff,

v.

CINCINNATI, NEW ORLEANS & PACIFIC RAILWAY COMPANY, et al., Defendant/Third Party Plaintiff,

v.

Edward SANDLIN, etc., Third Party Defendant.

Civil Action No. 94–56.

United States District Court, E.D. Kentucky.

Feb. 18, 1997.

James H. Wettermark, Burge & Wettermark, Birmingham, AL, for Plaintiff.

Robert Cetrulo, Ware, Bryson, West & Kummer, Edgewood, KY, for Defendants.

### OPINION AND ORDER

BERTELSMAN, Chief Judge.

This is an action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* Plaintiff claims that the railroad failed to provide him with a reasonably safe workplace, causing him to incur injuries in a car/train collision.

Plaintiff was employed by the defendant railroad companies as an engineer-trainee. On January 29, 1993, while plaintiff was performing his duties as an engineer-trainee, the train collided with a car driven by Reba Sandlin. The force of the collision caused plaintiff to be thrown between the engineer's

console and the engineer's chair, allegedly sustaining personal injuries.

Plaintiff sued the railroad and its affiliated companies under the FELA. Among other things, plaintiff claims that the train was travelling at an unsafe speed and that the particular crossing at issue was unusually dangerous.

On January 17, 1997, oral argument was held on Defendant Norfolk Southern Railway's motion to limit the testimony of the plaintiff's expert, Ronald Dunn (doc. # 137). Gregory Hughes represented the plaintiff. Defendant Norfolk Southern Railway was represented by Bob Cetrulo, and Defendant Edward Sandlin was represented by Gary Sergent. The defendant asks this court to preclude the plaintiff's expert from providing the following testimony: (1) that the train was operating at an unsafe speed at the time of the accident, (2) that the safety devices at the crossing were inadequate, and (3) that Norfolk Southern Railway should have closed the crossing.

## ANALYSIS

Two federal statutes are relevant to the motion before the court. The Federal Employers' Liability Act ("FELA"), enacted in the 1930s, provides the exclusive remedy for the plaintiff in this case, an injured railroad employee. The FELA provides a cause of action to a railroad employee for injury resulting "from the negligence of [the railroad] ... or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works ... or other equipment." 45 U.S.C. § 51.

The second relevant statute, the Federal Railway Safety Act ("FRSA"), was enacted nearly forty years after FELA "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101.[1] Regulations adopted by the Secretary of Transportation pursuant to the FRSA "may pre-empt any state law, rule, regulation, order, or standard relating to railroad safety." *CSX Transp. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct.

1732, 1737, 123 L.Ed.2d 387 (1993) (citing 45 U.S.C. § 434).

■ Because this case is based on the FELA, the court is not faced with a typical pre-emption issue. In considering this motion, however, the court must reconcile the two federal statutes. To the extent that they are inconsistent, the FRSA will supersede the FELA based on the policy embodied in the FRSA to ensure uniformity in law pertaining to railway safety. *See* 49 U.S.C. § 20106 ("Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable.")

### Train Speed

Federal regulations promulgated by the Secretary of Transportation pursuant to the Federal Railway Safety Act, 49 U.S.C. § 20103, and codified in 49 C.F.R. § 213.9(a) set maximum allowable speeds for trains based on the class of track on which they travel. The track where the accident occurred had a Federal Railway Safety Act speed limit of sixty miles per hour. The railroad, however, had a self-imposed speed limit of fifty-five miles per hour. In support of its claim that the train was operating at an excessive speed, the plaintiff's expert intended to testify that the train was exceeding the railroad's self-imposed speed limit.

In *Easterwood,* 507 U.S. at 676, 113 S.Ct. at 1744, the United States Supreme Court concluded that speed limits established under the FRSA preclude inconsistent state regulation of train speed. Numerous courts have extended *Easterwood,* concluding that internal railroad policies on train speed that are inconsistent with federal speed regulations are superseded by the Federal Railroad Safety Act. *See, e.g., St. Louis S.W. Ry. Co. v. Pierce,* 68 F.3d 276, 278 (8th Cir.1995) (railroad's self-imposed speed limit could not create an issue of negligence based on excessive speed); *Wright v. Illinois Cent. R.R. Co.,* 868 F.Supp. 183, 186 (S.D.Miss.1994) (railroad speed policies which are inconsistent with the controlling speed regulations are preempted); *Bowman v. Norfolk S. Ry. Co.,* 832 F.Supp. 1014, 1017 (D.S.C.1993).

---

1. The Federal Railway Safety Act was previously codified at 45 U.S.C. § 434.

As previously noted, this is not a state law case; the FELA is the sole remedy for this plaintiff. However, the same rationale that supports pre-emption of an unsafe speed argument in a state law case also indicates that speed regulations adopted pursuant to the FRSA should supersede an unsafe speed argument in this FELA case.

■ Section 20106 of the FRSA provides the following:

Laws, regulations, and orders related to railroad safety *shall be nationally uniform to the extent practicable*. . . . A state may adopt or continue in force an additional or more stringent law, regulation, or order relating to railroad safety when the law, regulation, or order . . . is *not incompatible with a law, regulation, or order of the United States government*. . . .

49 U.S.C. § 20106(2) (emphasis added). If a plaintiff were allowed to argue unsafe speed under the FELA but not under state law, the railroad safety uniformity intended by Congress would be compromised. The FRSA therefore supersedes plaintiff's FELA action insofar as it asserts that the train was traveling at an unsafe speed, provided that the speed is in keeping with the FRSA regulation. *See Thirkill v. J.B. Hunt Transp., Inc.,* 950 F.Supp. 1105, 1107–08 (N.D.Ala.1996) (FRSA speed regulation foreclosed an FELA claim based on unsafe speed); *but see Earwood v. Norfolk S. Ry. Co.,* 845 F.Supp. 880, 891 (N.D.Ga.1993).

In the present action, it is undisputed that the train was traveling within the sixty mile per hour speed restrictions set by the Federal Railroad Safety Act. The plaintiff's expert therefore may not testify that the train was traveling at an unsafe speed.

*Crossing Safety Devices*

■ To the extent that the evidence establishes that federal funds were used on the installation of safety devices at the crossing at issue, the Federal Railway Safety Act also precludes the plaintiff's expert from testifying that the devices were inadequate. The *Easterwood* Court held that "for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and

the means by which railroads are to participate in their selection." *Easterwood,* 507 U.S. at 671, 113 S.Ct. at 1741. With regard to these safety issues, the FRSA supersedes a negligence argument under the FELA. *See id.* (holding that the FRSA pre-empts state negligence laws regarding the railroad's duty to identify or repair dangerous crossings).

*Closing the Crossing*

■ Unlike train speed and safety devices, the decision whether to keep a railroad crossing open at all is not addressed by the FRSA. The FRSA therefore is not disharmonious with the argument that the railway should have closed the crossing.

Therefore, the court being advised, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The plaintiff's expert is precluded from testifying that the train was operating at an unsafe speed.

2. If the evidence establishes that federal funds were expended on the installation of safety devices at the crossing in issue, the plaintiff's expert is precluded from testifying that the crossing devices were inadequate.

3. To the extent that the evidence indicates that the railroad crossing was itself unsafe, the plaintiff's expert may testify that the railroad crossing should have been closed.