**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 23 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THE COLORADO & WYOMING
RAILWAY COMPANY, a Delaware
corporation,

       Plaintiff-Appellant,

v.

NATIONAL CONFERENCE OF
FIREMEN AND OILERS; ROGER A.
BURRILL, General Chairman,
National Conference of Firemen and
Oilers; PAUL SALINAS, Member,
National Conference of Firemen and
Oilers,

       Defendants-Appellees.
_____

No. 99-1296

(D.C. No. 98-M-1375)
(D.Colo.)

THE COLORADO & WYOMING
RAILWAY COMPANY, a Delaware
corporation,

       Plaintiff-Appellant,

v.

TRANSPORTATION
COMMUNICATIONS
INTERNATIONAL UNION;
TRANSPORTATION
COMMUNICATIONS

No. 99-1308

(D.C. No. 99-M-516)
(D. Colo.)

INTERNATIONAL UNION,
BROTHERHOOD RAILWAY
CARMEN DIVISION; RICHARD A.
JOHNSON, General President,
Brotherhood Railway Carmen
Division; RAYMOND W. SMITH,
General Chairman, Brotherhood
Railway Carmen Division; THOMAS
LELL, former General Chairman,
Brotherhood Railway Carmen
Division; LEROY POINDEXTER,
Local Chairman, Local No. 6018;
STEVE KUHN; JERRY PARDEE;
DAVE GRONBACH; DENNIS
OLGUIN; ROBERT BURLIN,

Defendants-Appellees.

---

**ORDER AND JUDGMENT** [*]

---

Before **BRORBY, HOLLOWAY,** and **BRISCOE** , Circuit Judges .

---

Plaintiff Colorado and Wyoming Railway Company ("C&W") appeals the

district court's entry of summary judgment in favor of the Transportation

Communications International Union ("TCU"), the National Conference of

Firemen and Oilers ("NCFO"), and several other defendants. The district court

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

dismissed C&W's claims for declaratory relief on the ground that it lacked subject matter jurisdiction. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I

The relevant facts are undisputed. C&W operates a short line railroad in Pueblo County, Colorado. Through its Brotherhood Railway Carmen Division ("Carmen"), the TCU represents C&W employees who build and repair rail cars. Among the employees represented by the TCU are Robert Burlin, Dave Gronbach, Steve Kuhn, Dennis Olguin, Jerry Pardee, and Leroy Poindexter (the "individual defendants"). Among those represented by the NCFO is Paul Salinas (another "individual defendant").

The present case arises out of the parties' responses to a labor strike. C&W is a wholly-owned subsidiary of CF & I Steel ("CF&I"), and operates primarily within a steel mill complex on CF&I's property. The United Steelworkers of America ("USWA") represents CF&I's employees. On October 3, 1997, the USWA organized a strike at CF&I and established picket lines at the main entrance to the mill. In anticipation of the strike, CF&I designated, and C&W advised employees to use, a separate entrance known as the "East Gate." On or around October 11, 1997, USWA steelworkers began picketing this entrance as well. Fearing for their safety, the individual defendants refused to cross the picket line and did not report for work for the duration of the strike. C&W

3

treated these employees as having resigned and began hiring new workers to fill the vacancies.  When the strike ended on December 31, 1997, the TCU and the NCFO notified C&W that the individual defendants were available to return to work.  C&W replied that the individual defendants had "effectively relinquished their employment" by refusing to work during the strike and that "permanent replacements have been and are being hired."  TCU Appellees' Supplemental Appendix ("TCU Supp. App.") at 79.

C&W's actions prompted the TCU to file three grievances.  The TCU alleged in its first grievance that C&W's actions violated several provisions of the employees' collective bargaining agreement.  The provisions cited by the TCU included (1) General Rule 12, which governs hiring preferences and the bulletining of new jobs and vacancies; (2) General Rule 20, which governs reductions of forces; (3) General Rule 38, which governs the dissemination of information about hired and terminated employees; (4) the "Carmen Helpers' Special Rule," which governs the use of apprentices when senior carmen are available to work; and (5) the "Grievances" rule, which prohibits discipline "without a fair hearing."  TCU Supp. App. at 55-56 (¶ 13), 82-85.  [1]  The TCU

_____

[1] The "Grievances" rule in the collective bargaining agreement states in pertinent part:

No employee shall be disciplined without a fair hearing b[y]

(continued...)

4

alleged in its second grievance that C&W's actions violated General Rule 22 of the collective bargaining agreement. That rule governs the creation and use of seniority lists. The TCU alleged in its third grievance that C&W's actions violated the "employee protections" provisions of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. According to the TCU, C&W ran afoul of the FRSA by "discharging and/or discriminating against the six carmen for refusing to work under hazardous conditions" created by "angry picketers" at the East Gate. Brief of TCU Appellees at 8. The TCU later withdrew the third grievance, and C&W denied each claim in the remaining grievances. The TCU then submitted its first two grievances to the National Railroad Adjustment Board ("NRAB" or "Adjustment Board") for arbitration pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 -88.

C&W's actions also prompted the NCFO to file a grievance. The NCFO's grievance contained two claims. First, the NCFO alleged that C&W's actions violated the RLA. Second, the NCFO alleged that C&W's actions violated the

---

[1](...continued)
designated officer of the carrier. Suspension in proper cases pending a hearing which shall be prompt, shall not be deemed a violation of this rule. At a reasonable time prior to the hearing, such employee and his duly-authorized representative will be apprised of the precise charge and given reasonable opportunity to secure the presence of necessary witnesses.

TCU Supp. App. at 84.

"fair hearing" provision in Salinas' collective bargaining agreement. [2] C&W

denied each claim. After an unsuccessful attempt to submit the dispute to a

Public Law Board ("PLB"), the parties turned to a procedural neutral appointed

by the National Mediation Board to clarify the manner in which issues would be

presented to the PLB. The procedural neutral did so in an order dated December

12, 1998. The parties informed this court at oral argument that the PLB recently

rendered a decision regarding the NCFO's grievance.

C&W filed complaints in federal district court against the TCU and the

NCFO. C&W alleged in its complaint against the TCU that "[u]nder Section 212

of FRSA, an employee's refusal to work is protected when there exists a

'hazardous condition' presenting 'an imminent danger of death or serious

---

[2] The "fair hearing" provision in Salinas' collective bargaining agreement states in relevant part:

> No employee shall be disciplined without a fair hearing by designated officer of the carrier. Suspension in proper cases pending a hearing which shall be prompt, shall not be deemed a violation of this rule. At a reasonable time prior to the hearing, such employee and his duly-authorized representative will be apprised of the precise charge and given reasonable opportunity to secure the presence of necessary witnesses. If it is found that an employee has been unjustly suspended or dismissed from the service, such employee shall be reinstated with his seniority rights unimpaired, and compensated for the wage loss, if any, resulting from said suspension or dismissal, and reinstatement of all health and welfare benefits.

NCFO Appendix at 95, 241 (¶ 6).

injury.'" Aplt. App. at 209 (¶ 11, citation omitted). C&W further alleged that an employee may not seek protection under both the FRSA "'and another provision of law for the same allegedly unlawful act of the carrier.'" Id. at 210 (¶ 14, citation omitted). Finally, C&W alleged that the TCU had repeatedly and consistently attempted to justify the individual defendants' refusal to work on the ground that the USWA picket line threatened the defendants' safety and thus created a "hazardous condition." Id. at 209 (¶¶ 10, 12), 211 (¶ 17). Based on these allegations, C&W sought a judicial declaration that (1) the dispute between the parties arose under and was "subject to resolution solely under the standards contained in" the FRSA ; (2) by filing a FRSA-based grievance, the TCU elected a remedy and was bound to seek protection under that statute ; (3) any NRAB jurisdiction over the dispute was "limited to deciding the matter in accordance with FRSA;" and (4) the dispute involved statutory (rather than contractual) rights not within the NRAB's jurisdiction under the RLA. Id. at 214. C&W also sought to enjoin the TCU from pursuing its claims with the NRAB. Similarly, in its complaint against the NCFO, C&W sought a judicial declaration that (1) the dispute between the parties arose and was "subject to resolution solely under" the FRSA; (2) the jurisdiction of any adjustment board created to resolve the dispute was limited "to deciding the matter in accordance with" the FRSA; and (3) the dispute involved statutory rights not governed by the RLA. Id. at 14. C&W

7

sought to enjoin the NCFO from "pursuing the use of a procedural neutral" to rule on any "jurisdictional issue." Id.

The district court entered summary judgment against C&W in both cases. After reviewing the parties' pleadings and conducting a hearing in the TCU's case, the court issued a short order stating that "the issues in dispute" were "not restricted to a claimed violation" of the FRSA and were "subject to arbitration under the jurisdiction of" the NRAB. Id. at 384. The court then dismissed C&W's complaint against the TCU "for lack of subject matter jurisdiction." Id. The court subsequently issued another short order denying C&W's motion to alter or amend the judgment. [3] After reviewing the parties' pleadings in the NCFO's

_____

[3] The district court offered the following explanation for its denial of C&W's motion to alter or amend the judgment:

> The argument made is that the only possible justification for the claimants' refusal to work was their claim that the picket line constituted an unsafe condition which would, necessarily, be an issue under the Federal Railroad Safety Act. The plaintiff argues that would be true under the election of remedies provision of the Act and that there is no source of legal protection other than FRSA for a refusal to work because of safety concerns. The plaintiff also contends that the dispute between the parties is not a "minor dispute" subject to resolution under the terms of the collective bargaining agreement. That argument is also based on the assertion that the claimants are not able to justify their refusal to report for work on other than the reasons given at the time, that is, safety concerns. The court disagrees.

Aplt. App. at 391-92.

8

case, the district court likewise held that "the issues raised" by C&W were "properly within the jurisdiction of an Adjustment Board" under the RLA. Id. at 182. The court concluded C&W's argument that the FRSA was "the exclusive remedy for any action taken by the plaintiff with respect to the defendant Paul Salinas" was "without merit," and dismissed C&W's complaint against the NCFO "for lack of subject matter jurisdiction." Id.; see also id. ("This action is dismissed without any determination on the merits.").

## II

The parties agree that we review a grant of summary judgment de novo. Hidalgo v. Fagen, Inc., 206 F.3d 1013, 1017 (10th Cir. 2000). Summary judgment is appropriate when there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We likewise review de novo "issues of subject matter jurisdiction." United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).

The text of the Federal Railroad Safety Act provides the starting point for our analysis. The statute provides that:

> A railroad carrier engaged in interstate or foreign commerce may not discharge or in any way discriminate against an employee for refusing to work when confronted by a hazardous condition related to the performance of the employee's duties, if—
> **(A)** the refusal is made in good faith and no reasonable alternative to the refusal is available to the employee;

9

**(B)** a reasonable individual in the circumstances then confronting the employee would conclude that—

    **(i)** the hazardous condition presents an imminent danger of death or serious injury; and

    **(ii)** the urgency of the situation does not allow sufficient time to eliminate the danger through regulatory statutory means; and

**(C)** the employee, where possible, has notified the carrier of the hazardous condition and the intention not to perform further work unless the condition is corrected immediately. . . .

49 U.S.C. § 20109(b)(1). Under the heading "Dispute resolution," the FRSA mandates that "[a] dispute, grievance, or claim arising under this section is subject to resolution under section 3 of the Railway Labor Act (45 U.S.C. § 153)." 49 U.S.C. § 20109(c). Under the heading "Election of remedies," the FRSA reads as follows: "An employee of a railroad carrier may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the carrier." 49 U.S.C. § 20109(d).

The Railway Labor Act also informs our analysis. The RLA establishes a framework for the resolution of "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions," 45 U.S.C. § 153, First (i), known in legal parlance as "minor disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252-53 (1994). These disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Id. at 253 (citation omitted);

10

see also Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 305 (1989) ("Conrail") (stating that the "distinguishing feature" of a minor dispute is that it "may be conclusively resolved by interpreting the existing agreement"). "Minor disputes initially must be dealt with through a railroad's internal dispute resolution processes, and if not settled there, may be submitted to a division of the Adjustment Board, or to a Public Law Board, which is an arbitration board chosen by the parties." Atchison, Topeka and Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 563 (1987); accord Conrail, 491 U.S. at 303-04. This arbitral mechanism is "mandatory," Hawaiian Airlines, 512 U.S. at 252; see also Brotherhood of Locomotive Engineers v. Louisville and Nashville R.R. Co., 373 U.S. 33, 38 (1963) (indicating that the RLA provides a "mandatory, exclusive, and comprehensive system for resolving grievance disputes"), in part because "Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." Buell, 480 U.S. at 562 n.9 (quoting, among other cases, Trainmen v. Chicago, R. & I. R. Co., 353 U.S. 30, 40 (1957)). As a corollary, "[j]udicial review of these Boards' determinations has been characterized as 'among the narrowest known to the law.'" Id. (quoting Union Pacific R.R. Co. v. Sheehan, 439 U.S. 89, 91 (1978)).

C&W's position on appeal is similar, but not identical, to the position it took in proceedings before the district court. Citing 28 U.S.C. § 1331 and 28

11

U.S.C. § 2201, C&W contends that the district court necessarily had subject matter jurisdiction over its claims for declaratory relief. C&W acknowledges that the "underlying dispute" – i.e., "whether the Individual Defendants were justified in refusing to come to work" – is subject to NRAB arbitration, but argues that "the applicability of FRSA to the underlying dispute rather than the RLA" can only be determined by a federal court. Appellant's Opening Brief at 11 & n.2; see also id. at 14 (asserting that C&W "sought declaratory relief on the very narrow issue of whether the underlying dispute, which is admittedly arbitrable, is subject to arbitration under FRSA"). In addition, C&W maintains that the individual defendants' refusal to work "because of safety concerns" cannot be categorized as a "minor dispute" under the RLA. Id. at 15. As a result, says C&W, the TCU and the NCFO can arbitrate their grievances only under the auspices of the FRSA. Id. at 15-16; see also id. at 16 (arguing that the FRSA is "[t]he only potential source" of protection for the individual defendants' decision not to return to work during the pendency of the strike). Significantly, C&W's appellate brief makes no mention of the FRSA's "election of remedies" clause, 49 U.S.C. § 20109(d). Consequently, that clause plays no role in our disposition of the appeal.

We affirm the entry of summary judgment against C&W. [4] The central

---

[4] We agree with the district court's ultimate conclusion regarding the categorization of the claims asserted, but we disagree with the district court's

(continued...)

premise of C&W's requests for declaratory relief is that the grievances in question cannot be arbitrated as "minor disputes" under the RLA. C&W attempts to justify that premise on two grounds. First, C&W emphasizes that "the collective bargaining agreements between the parties provide no protection for a refusal to work because of safety concerns." Id. at 16. It follows, says C&W, that a dispute about the individual defendants' "right to refuse to work because of safety issues cannot be resolved by application of the collective bargaining agreement, and, therefore, cannot be a minor dispute." Id. Second, C&W suggests that "a refusal to work because of safety concerns cannot be both a minor dispute arising under the collective bargaining agreement and a dispute arising under FRSA." Id. at 18. According to C&W, "[t]he two types of disputes are mutually exclusive, because the rights and protections granted under FRSA are wholly independent of the collective bargaining agreement." Id. In the same vein, C&W asserts that the FRSA necessarily supersedes the RLA "to the extent that there is a conflict between the two." Id. at 21. Neither of C&W's arguments is convincing.

We reject C&W's initial argument that the grievances filed on behalf of the individual defendants do not arise under the RLA. Expressing no opinion on the

---

[4](...continued)
conclusion that it lacked subject matter jurisdiction.

merits of the grievances, we nonetheless easily conclude that the claims asserted by the TCU and the NCFO qualify as "minor disputes" under the RLA. [5] The nexus between those claims and the collective bargaining agreements is plain. As the TCU aptly notes in its brief,

> [t]he TCU's contractual grievances allege violations of the seniority rules and disciplinary procedures set forth in the collective bargaining agreement. The grievances further assert that the six named carmen are entitled to reinstatement to their positions because C&W failed to follow the contractual rules governing the posting and filling of vacancies. Finally, the TCU asserts that C&W has violated the Carmen Helpers' Special Rule by using carmen helpers while carmen journeymen remain on furlough. . . . The claims on their face

---

[5] In their appellate briefs, the parties urge us to apply the Conrail test for distinguishing between "minor" and "major" disputes. The Supreme Court held in Conrail that "[w]here an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major." 491 U.S. at 307. Whether this test is applicable to the case at hand is far from clear. As the Supreme Court explained in Hawaiian Airlines, the "arguably justified" standard

> was employed only for policing the line between major and minor disputes. Recognizing that accepting a party's characterization of a dispute as "minor" ran the risk of undercutting the RLA's prohibition "against unilateral imposition of new contractual terms," the [ Conrail ] Court held that a dispute would be deemed minor only if there was a sincere, nonfrivolous argument that it turned on the application of the existing agreement, that is, if it was "arguably justified" by that agreement. Obviously, this test said nothing about the threshold question whether the dispute was subject to the RLA in the first place.

512 U.S. at 265-66 (citation omitted).

14

rest upon the meaning and application of specific provisions of the parties' collective bargaining agreement.

Brief of TCU Appellees at 13; see also Brief of NCFO Appellees at 16 ("NCFO and Mr. Salinas contend that Mr. Salinas was improperly dismissed, which is certainly a form of discipline, without first being afforded the fair hearing required by the CBA."). We emphasize, however, that an adjustment board – not a federal court – ultimately must determine whether the claims asserted in the grievances have merit. An adjustment board also must assess the merit of C&W's assertion that the absence of a specific provision addressing "safety-based refusals to return to work" precludes the TCU and the NCFO from relying on the collective bargaining agreements.

C&W's second argument is more complicated. C&W contends that even if the grievances arise under the RLA, they also implicate the FRSA, and the two types of disputes are mutually exclusive. Stated differently, C&W maintains that any claim that might be governed by the FRSA must be governed by the FRSA, to the exclusion of all other possible bases of relief. As C&W correctly notes in its brief, some courts have held that "[i]f a work stoppage is a protected refusal to work because of hazardous conditions under § 10(b) of the FRSA, it cannot also be a minor dispute over the terms and conditions of employment under § 3 of the RLA." Boston and Maine Corp. v. Lenfest, 799 F.2d 795, 801 (1st Cir. 1986) ("Lenfest"); see also Monongahela Railway Co. v. Transportation

15

Communications Union, Civ. A. No. 89-1439, 1989 WL 121170, at *3 (W.D. Pa. July 12, 1989) ("We agree with the reasoning of the Court of Appeals in Lenfest and adopt the conclusion as a finding of this Court.").

This case is not analogous to Lenfest. In Lenfest, a railroad requested a preliminary injunction prohibiting members of a union from striking over allegedly unsafe working conditions. Union members claimed that their refusal to work was protected by the FRSA. The district court granted the railroad's request for an injunction, and held that the work stoppage was a "minor dispute" rather than protected conduct under the FRSA. 799 F.2d at 796. The First Circuit approved the issuance of an injunction against the union, but stated that the district court's authority to issue such an injunction derived from the FRSA, not the RLA. Relying on materials adduced at an evidentiary hearing and the district court's order, the First Circuit concluded that the work stoppage was indeed a "protected refusal to work because of hazardous conditions," id. at 797, 801, 804, and left a modified version of the preliminary injunction in place during the pendency of NRAB proceedings. In contrast, no party to this appeal is seeking a preliminary injunction, [6] the district court has not made the threshold findings of fact necessary to evaluate a request for a preliminary injunction, the TCU and the

_____

[6] C&W previously requested a preliminary injunction preventing the TCU from pursuing arbitration before the NRAB. The district court denied C&W's request, and C&W has not appealed that decision.

16

NCFO are not alleging either that the individual defendants engaged in "protected conduct" under the FRSA or that C&W violated the FRSA, and C&W is essentially attempting to use the statute to preempt the individual defendants' contract claims.

In addition, a finding that the FRSA somehow preempts or supersedes the individual defendants' contract claims would make little sense. First, nothing in the text of the FRSA suggests that preemption is warranted in this case. Section 20106 of the statute expressly preempts certain types of State regulation and provides that "[l]aws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106. The FRSA does not discuss the preemption of federal law, and it appears that the only federal statute to which courts have applied § 20106 is the Federal Employers' Liability Act ("FELA"). See, e.g., Waymire v. Norfolk and Western Ry. Co., 65 F. Supp. 2d 951, 953-58 (S.D. Ind. 1999) (holding that "when these two statutes are inconsistent, the FRSA supersedes the FELA in order to ensure uniformity in railway safety law").[7] Second, contrary to C&W's argument, this case does not

_____

[7] Rice v. Cincinnati, New Orleans & Pacific Ry. Co., 955 F. Supp. 739, 740-41 (E.D. Ky. 1997) and Thirkill v. J.B. Hunt Transp., Inc., 950 F. Supp. 1105, 1107 (N.D. Ala. 1996) reach the same result. Of course, we express no opinion as to whether these cases were rightly decided. At least one other federal district court has concluded that the FRSA neither conflicts with nor supersedes the FELA. See Earwood v. Norfolk Southern Ry. Co., 845 F. Supp. 880, 885,

(continued...)

17

present a manifest conflict between the FRSA and the RLA. The only potential "conflict," at least from C&W's perspective, is that the collective bargaining agreements may provide the individual defendants with procedural rights above and beyond those provided in the FRSA. This purported "conflict," if it exists at all, stems from contractual agreements into which C&W freely entered – not from the text of the RLA. We therefore reject C&W's contention that the FRSA precludes the TCU and the NCFO from asserting contractual claims on behalf of the individual defendants.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[7](...continued)
889-91 (N.D. Ga. 1993) ("The Court concludes that Plaintiff's FELA claims are not precluded by F.R.S.A.").

18