UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-60215

_____

DONALD G. LANE,

Plaintiff-Appellant/Cross-Appellee,

versus

R. A. SIMS, JR., INC., ABC, That Person, Firm,
Company, or Entity That Employed Daniel Wallace
At The Time of The Crossing Collision Which
Makes The Basis of This Suit; DE&F, That Person,
Firm, Company or Entity Who Negligently
Entrusted The Truck To Daniel Wallace;
GH&I, That Person, Firm, Company, or Entity
Who Leased, and/or Maintained and Inspected
The Crossing Which Is The Subject
Of This Lawsuit; JK&L; MN&O,

Defendants-Appellees,

CSX TRANSPORTATION, INC.,

Defendant-Appellee/Cross-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

February 6, 2001

Before BARKSDALE, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this negligence action arising out of a collision at a
crossing between a train and a vehicle, primarily at issue is
whether the Federal Railroad Safety Act (FRSA), 49 U.S.C. §§ 20101-
20153, and a regulation promulgated thereunder, 49 C.F.R. § 213.9,

which set maximum train speeds for different classes of tracks, preclude a railroad employee's negligence action under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, the employee claiming the train was proceeding at an excessive speed when involved in the collision, even though it was traveling *below* the speed limit established by the regulation. Railroad employee Donald G. Lane appeals the summary judgment granted CSX Transportation, Inc. (the railroad), and the denial of his motion for a new trial as to R. A. Sims, Jr., Inc. (the vehicle); CSX cross-appeals the denial of its motion for judgment as a matter of law on its cross-claim against Sims. We **AFFIRM**.

I.

Lane's FELA action against CSX and Sims alleged he was injured when the train on which he was working as an engineer for CSX collided with Sims' tractor-trailer, driven by Wallace, at a crossing in Gulfport, Mississippi. Immediately prior to the collision, the train was traveling 44 miles per hour. The CSX speed limit for that crossing was 45 miles per hour, while the speed limit established for that crossing by Federal Railway Administration Track Safety Standards, 49 C.F.R. § 213.9, was 60 miles per hour. Among other things, Lane's negligence claim against CSX asserted: the train was traveling at an excessive and unsafe speed under the circumstances (heavy lunchtime traffic at a downtown crossing).

2

CSX cross-claimed against Sims, asserting, *inter alia*: its employee, Wallace (the vehicle driver), was negligent for failing to yield the right-of-way to the train; and Sims failed to comply with a Mississippi statute requiring it to notify CSX in advance of its travel over the crossing. Lane made similar negligence claims against Sims.

The district court granted partial summary judgment for CSX on Lane's FELA excessive-speed claim. The remaining issues were tried to a jury, which found *no* negligence on the part of CSX, Sims, or Lane. The district court denied new trial motions by Lane and CSX.

II.

Lane challenges the summary judgment granted CSX on his FELA excessive-speed claim and the denial of a new trial on his negligence claim against Sims. CSX contests the denial of judgment as a matter of law on its cross-claim against Sims.

A.

The FELA provides the exclusive remedy for a railroad employee injured as a result of his employer's negligence. *See, e.g.*, **Wabash R.R. Co. v. Hayes**, 234 U.S. 86, 89 (1914); **Janelle v. Seaboard Coast Line R.R. Co.**, 524 F.2d 1259, 1261 (5th Cir. 1975). It authorizes an injured railroad employee to recover damages from his employer for "injury or death resulting in whole or in part from the [railroad's] negligence". 45 U.S.C. § 51. But, by summary judgment, the district court held Lane's FELA excessive-

3

speed claim was precluded by the FRSA and the track-speed regulations promulgated thereunder.

FRSA's stated purpose "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents". 49 U.S.C. § 20101. It authorizes the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety", 49 U.S.C. § 20103(a); and provides that "[l]aws, regulations, and orders *related to railroad safety* shall be *nationally uniform* to the extent practicable". 49 U.S.C. § 20106 (emphasis added).

The Secretary of Transportation has promulgated regulations pursuant to this authority, including establishing maximum train speeds for various classes of railroad tracks. 49 C.F.R. § 213.9. It is undisputed that the train involved in the collision was *not* exceeding the 60-mile-per-hour speed limit established by those regulations for the subject crossing.

The FRSA's goal of national uniformity for laws and regulations relating to railroad safety does *not* preclude a FELA excessive-speed claim, according to Lane, because the FRSA and FELA are *not* in conflict. He asserts FRSA speed regulations are *minimum* safety requirements, compliance with which is evidence of due care, but does *not* preclude finding negligence if *reasonable* railroads would have taken additional precautions to prevent injury to their employees.

4

The Supreme Court considered the FRSA speed limit regulations in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993). A *state common law* action, arising out of a truck driver's death in a crossing collision, was filed against the railroad; the action claimed, *inter alia*, the train was traveling at an excessive speed. It was conceded, however, that the train was traveling at *less than* the maximum speed established in 49 C.F.R. § 213.9. *Id*. at 673. The Court held the claim preempted by the FRSA's express preemption provision. *Id*. at 675. That provision allows States to regulate railroad safety "*until* the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement". 49 U.S.C. § 20106 (emphasis added).

The *Easterwood* plaintiff contended that the maximum speed limits established in the regulations were *merely ceilings*, permitting imposition of liability against the railroad *if* plaintiff could establish the conditions required a lower speed. *Id*. at 673-74. The Court held otherwise; because the Secretary of Transportation had considered the hazards posed by track conditions before adopting the regulations, "the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort" plaintiff urged. *Id*. at 674.

Because the case at hand involves a claim under another federal statute, FELA, *Easterwood*, which dealt with a state common law claim subject to FRSA's express preemption provision, is *not*

5

controlling. Nevertheless, the Seventh Circuit found **Easterwood** persuasive in concluding that a FELA excessive-speed claim was inconsistent with FRSA's goal of national uniformity. **Waymire v. Norfolk & W. Ry. Co.**, 218 F.3d 773, 776 (7th Cir. 2000), *cert. denied*, ___ S. Ct. ___, 2001 WL 32488 (2001). The **Waymire** plaintiff was the conductor on a train that collided with a truck at a crossing. *Id*. at 774. The train was traveling at 23 miles per hour, well under the 60-miles-per-hour speed limit set by the federal regulations. Noting that the operation of the trains in **Waymire** and **Easterwood** was identical (traveling at less than the FRSA approved speed), the Seventh Circuit stated: "It would ... seem absurd to reach a contrary conclusion ... when the Supreme Court has already found that the conduct is *not* culpable negligence". *Id*. at 776 (emphasis added).

Two other district courts considering similar FELA claims have reached the same conclusion, reasoning that the railroad safety uniformity intended by the FRSA would be compromised if an excessive-speed negligence claim were permitted under the FELA, but *not* under state law. *See* **Rice v. Cincinnati, New Orleans & Pac. Ry. Co.**, 955 F. Supp. 739, 740-41 (E.D. Ky. 1997) (FELA excessive-speed claim precluded by FRSA and regulations where train traveling at speed exceeding railroad's self-imposed speed limit, but *below limit* established in regulations); **Thirkill v. J.B. Hunt Transp., Inc.**, 950 F. Supp. 1105, 1107 (N.D. Ala. 1996) (FELA excessive-

6

speed claim precluded by FRSA and regulations where train was traveling *within speed limit* set by regulations).

Only one court has decided otherwise. *Earwood v. Norfolk Southern Railway Co.*, 845 F. Supp. 880, 891 (N.D. Ga. 1993), on which Lane relies, held FRSA speed regulations did *not* preclude a FELA excessive-speed claim. The court reasoned the regulations were *not* directed at employee safety and established *only* minimum safety requirements. *Id*.

In the light of Congress' intent that railroad safety regulations be nationally uniform to the extent practicable, we find *Waymire*, *Thirkill*, and *Rice* far more persuasive than *Earwood*. Such uniformity can be achieved only if the regulations covering train speed are applied similarly to a FELA plaintiff's negligence claim and a non-railroad-employee plaintiff's state law negligence claim. Otherwise, a railroad employee could assert a FELA excessive-speed claim, but a non-employee motorist involved in the same collision would be precluded from doing so. Dissimilar treatment of the claims would have the untenable result of making the railroad safety regulations established under the FRSA virtually meaningless: "The railroad could at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs yet be found negligent under the FELA with respect to other classes of plaintiffs for the very same conduct". *Waymire v. Norfolk & W. Ry. Co.*, 65 F. Supp. 2d 951, 955

7

(S.D. Ind. 1999), *aff'd*, 218 F.3d 773 (7th Cir. 2000). Moreover, allowing juries in FELA cases to find negligence based on excessive speed, even though it did *not* exceed that set by the FRSA regulations, would further undermine uniformity, because it would result in the establishment, through such verdicts, of varying, uncertain speed limits at different crossings, as well as different speed limits at the same crossing, depending on the time of day, traffic conditions, and other variables.

*Earwood*'s conclusion that the regulations promulgated pursuant to the FRSA were *not* directed at railroad employee safety is inconsistent with that Act, which expressly states its purpose is "to promote safety in *every area of railroad operations* and reduce railroad-related accidents and incidents". 49 U.S.C. § 20101 (emphasis added). Railroad operations *cannot* be conducted *without* railroad employees; therefore, it seems obvious that railroad employee safety is one of the "area[s] of railroad operations" addressed by the statute and regulations. *See* **Waymire**, 65 F. Supp. 2d at 956 (noting FRSA's legislative history supports conclusion that "railroad *employee safety* was a significant motivation behind the FRSA's enactment" (emphasis added)).

Accordingly, the district court correctly held Lane could *not* maintain a FELA excessive-speed negligence claim against CSX. As a result, the partial summary judgment awarded CSX was proper.

Concerning the denial of his new trial motion, Lane maintains the jury's verdict in favor of Sims "was against the clear and substantial evidence in the case". Our "review of the denial of a new trial motion is more limited than when one is granted". *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998). The denial will be affirmed unless there is "a clear showing of an absolute absence of evidence to support the jury's verdict, thus indicating that the trial court had abused its discretion in refusing to find the jury's verdict contrary to the great weight of the evidence". *Id*. (internal quotation marks, emphasis, and citations omitted).

Sims' negligence, according to Lane, is established by Sims' admission it did *not* comply with a Mississippi statute requiring it to notify CSX before Sims' tractor-trailer attempted to cross the CSX tracks. Lane maintains the collision would *not* have occurred had Sims so complied.

The statute provides:

> No person shall operate or move any caterpillar tractor, steam shovel, derrick, roller, or any equipment or structure having a normal operating speed of six or less miles per hour or a vertical body or load clearance of *less than nine inches* above the level surface of a roadway upon or across any tracks at a railroad grade crossing without notice of any such intended crossing first being given to a superintendent of such railroad and a

> reasonable time being given to such railroad
> to provide proper protection at such crossing.

MISS. CODE ANN. § 63-3-1013 (emphasis added).

Sims' owner testified:  the ground clearance of his tractor-trailer was less than nine inches and *no* advance notice was given to CSX; and, prior to the accident, he had *not* seen the statute. CSX presented evidence a flagman would have been present had the statutorily required notice been given.

Sims asserts Lane failed to properly preserve this issue because he did *not* mention the statute in his new trial motion.  In attempting to show otherwise, Lane's reply brief quotes his district court brief in support of the motion.  That brief, however, is *not* in the record, apparently because the local rules require that briefs be submitted directly to the judge and *not* filed with the clerk, *see* UNIFORM LOCAL R. 7.1(D), 7.2(E), and because the parties did *not* seek to supplement the record pursuant to FED. R. APP. P. 10(e)(2).  The order denying the motion, however, supports Lane's assertion that, in support of his motion, he briefed the statute.

Sims contends further:  the statute was *not* applicable because the load involved in the collision was being transported under permit from the Mississippi Department of Transportation, which stated the limitations on how the load was to be transported; and such limitations did *not* include any requirement that Sims comply

10

with § 63-3-1013. Lane counters that the permit in question was *not* applicable on the date of the collision.

Lane's present contention that he is entitled to a new trial because the jury's verdict is against the great weight of the evidence of Sims' negligence *per se* is somewhat incongruous, in the light of the fact that he did *not* contend, in closing argument, either that Sims was negligent *per se* for violating the statute, or that the permit was inapplicable. Nor does the record contain any indication that Lane requested a jury instruction regarding the statute. The record does *not* contain any instructions requested by the parties; the charge conference was *not* transcribed; and subsequently, when invited by the district court, Lane did *not* object to the charge given, which did *not* include any instruction regarding the Mississippi statute.

Under these circumstances, we *cannot* conclude that the district court abused its discretion by denying Lane's new trial motion. As discussed *infra* in connection with CSX's challenge to the sufficiency of the evidence, there was ample evidence to support the jury finding Sims *not* negligent.

C.

In its required statement of the issues in its appellate brief, CSX contends the district court erred by denying its new trial motion as to Sims "because the jury's verdict in favor of Sims was against the *greater weight* of the evidence". (Emphasis

11

added.)  Similarly, its required summary of the argument asserts the jury's verdict in favor of Sims "is against the *greater weight of the evidence*".  (Emphasis added.)  But, the argument on this issue in its brief recites the standard of review for denial of judgment as a matter of law and seeks *rendition of judgment in its favor, not a new trial*.  Accordingly, CSX has abandoned any claim regarding the district court's denial of its new trial motion.  *E.g.,* FED. R. APP. P. 28(a)(9); ***Eldredge v. Martin Marietta Corp.***, 207 F.3d 737, 742 n.5 (5th Cir. 2000).  Instead, its appeal as to Sims is focused solely on the denial of its motion for judgment as a matter of law on its cross-claim against Sims.  The motion was made after Lane rested, re-urged after Sims rested, and re-urged at the close of all the evidence.

In reviewing the sufficiency of the evidence to support a jury verdict in a civil action, we must affirm unless "there is *no* legally sufficient evidentiary basis" for the jury's verdict.  *E.g.,* FED. R. CIV. P. 50(a)(1) (emphasis added); ***Vadie v. Mississippi State Univ.***, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, ___ S. Ct. ___, 2001 WL 32522 (2001).  In this regard, the evidence, as well as all reasonable inferences from it, are viewed in the light most favorable to the verdict.  ***Id***.

1.

CSX contends Sims' negligence is established by its violation of the previously-discussed § 63-3-1013, which required Sims to

12

notify CSX in advance of its using the crossing, so that a flagman could be present. CSX, *unlike Lane*, did urge in closing argument Sims' alleged violation of the statute as a basis for the jury finding Sims negligent. But, the record, as noted, does *not* contain any instructions requested by the parties; and the district court's charge, to which CSX had *no* objections when invited to make them, did *not* address the statute. Moreover, CSX stated *no* additional instructions were requested.

Of course, failure to request an instruction does *not* preclude granting judgment as a matter of law. ***Deffenbaugh-Williams v. Wal-Mart Stores, Inc.***, 188 F.3d 278, 284 n.5 (5th Cir. 1999). But, this does reflect the lack of emphasis — and underscores the jury's verdict — concerning the statute.

On cross-examination by CSX, Wallace testified: he had never had to notify a railroad in advance before hauling a load over a crossing; he had used many railroad crossings and had never seen a flagman holding back a train while a truck crossed the tracks; and the state-issued permit did *not* require Sims to notify CSX before crossing its tracks.

Sims' owner, Ray Alton Sims, Jr., testified: he had 15 years' experience hauling heavy equipment; prior to the collision, he had *not* seen the Mississippi statute; he had never contacted any railroad about crossing its tracks with a trailer with low ground clearance; he would *not* know whom to contact or who owned the

13

various tracks to be crossed; and the permit required by state law did *not* require Sims to contact railroads before crossing their tracks.

CSX presented evidence that: it is often called upon to provide flagmen to protect the movement of trucks with low ground clearance across its tracks; prior to the collision, Sims did *not* contact CSX; and the permit was *not* valid for the date of the collision.

In the light of the conflicting evidence regarding the applicability of the statute, and the absence of any instruction to the jury regarding its application, there was a legally sufficient evidentiary basis for the jury finding Sims *not* negligent *per se*.

2.

CSX next contends Sims was negligent because Wallace, its employee, breached a legal duty to yield to its approaching train. CSX maintains: the train was blowing its horn, from a proper distance, prior to reaching the crossing; and active warning devices were operating and gave Sims' driver more than the required 20-second warning time.

Wallace testified: he stopped, looked, and listened before entering the crossing, but could *not* see the approaching train until it was too late because an Amtrak car parked on an auxiliary track blocked his view; and he did *not* see any flashing lights or hear the train's horn or bells until after he was in the crossing,

14

prior to the collision, when his escort driver, who was following him, contacted him by radio to tell him that the crossing arm was descending. Wallace's escort and several other witnesses testified similarly that the train's horn did *not* blow and the warning signals at the crossing were *not* activated until *immediately before* the collision.

Lane and the conductor testified, however, that the train's horn started blowing several hundred feet prior to the crossing and continued up until the moment of impact. Other witnesses to the collision testified that they observed the warning signals and heard the train's horn blowing *before* Sims' tractor-trailer entered the crossing.

We reject CSX's contention that the testimony of Sims' witnesses that they did *not* hear the horn should be ignored. Needless to say, it is *not* our function to re-weigh the evidence or re-evaluate the credibility of witnesses; that is for the jury. *E.g.*, **Hiltgen v. Sumrall**, 47 F.3d 695, 700 (5th Cir. 1995). In short, the conflicting testimony is a legally sufficient evidentiary basis for the jury finding Sims *not* negligent.

### 3.

Finally, CSX claims Sims' spoliation of evidence (loss of records of investigation of collision and Wallace's personnel records) supports its contention that Sims was negligent. CSX elicited some evidence of spoliation. But, even though it referred

15

to the issue during its closing argument, it did *not* object to a spoliation instruction *not* being given.  In any event, the jury obviously weighed the conflicting evidence and rejected spoliation as a basis for finding Sims negligent.

### III.

For the foregoing reasons, the judgment of the district court, and its order denying a new trial, are

*AFFIRMED.*