United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

**No. 04-20245**

---

**A.O. SMITH CORPORATION,**

Plaintiff-Appellee,

**versus**

**ELBI S.P.A.; ELBI OF AMERICA, INC.**

Defendants-Appellants.

---

**Appeal from the United States District Court
for the Southern District of Texas
(4:02-CV-1871)**

---

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Elbi S.p.A. and Elbi of America, Inc. (collectively, Elbi) appeal the denial of judgment as a of matter of law (JMOL), claiming insufficient evidence for breach of contract concerning Elbi's sale of water tanks to A.O. Smith Corporation. (The breach of express warranty finding against Elbi is *not* at issue.) The evidence was sufficient for a reasonable jury to find Smith properly revoked its acceptance of the tanks when it found they were defective. **AFFIRMED.**

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Smith began negotiating with Elbi in 1999 to buy overflow thermal expansion tanks for use in residential water heater systems. Smith intended to sell these tanks under its own label. In researching expansion-tank options, Smith tested those of several companies. Smith cut open tanks that failed a non-destructive pressure-test to examine the interiors and ascertain why the tanks did not hold air.

Accordingly, in the course of negotiations with Elbi, Smith tested sample tanks to ensure they held pressure. Because Elbi's tanks passed that test, Smith decided destructive testing was unnecessary. (Smith performed such testing after it had contracted with Elbi and the tanks began failing in the field.)

Elbi's product catalog contained a provision warranting the tanks would be free from material and workmanship defects for five years, and Elbi provided other literature to Smith on its warranty procedures. Smith expressed interest in entering the thermal-expansion-tank wholesale market in the United States, and its sales team discussed the possibility of future large volume purchases from Elbi. After testing the Elbi product and reviewing the product literature, Smith purchased 14,400 tanks from Elbi.

Smith began selling those tanks to its customers in September 1999. In June 2001, however, Smith began receiving reports from its customers of leaking and rusting tanks. Customers in Arizona,

2

particularly, complained of faulty tanks and demanded replacements; in the end, approximately 500 Elbi tanks had to be replaced in Arizona. Smith submitted several of the Arizona tanks to Elbi of America in Houston to send to Elbi's Italian factory for testing and warranty service. In addition, Smith performed its own in-house testing to ascertain the source of the problem. It was discovered that the tanks' interior coating, an epoxy-based substance, had been defectively applied, allowing water to leak between the lining and the tank and corrode the tank.

Elbi initially honored its warranty by issuing credits to Smith for several defective tanks. Elbi stopped doing so, however, once it became aware of the volume of defective tanks. Although it offered to replace the approximate 500 tanks from Arizona, Elbi refused to replace the entire purchase or issue credits because it did not believe all 14,400 tanks were defective. Smith engaged a service agent to replace the faulty tanks with those of another company.

By its 20 September 2001 letter to Elbi, Smith expressly revoked acceptance of the entire order. Post-revocation, Smith ceased selling those tanks, except for 75 which were sold inadvertently. Smith continued to store the tanks in its warehouse upon Elbi's refusing to accept their return.

Invoking diversity jurisdiction, Smith filed this action against Elbi, claiming breach of contract and of warranty under the Texas Uniform Commercial Code (UCC). Elbi counterclaimed.

At the close of Smith's case in chief, Elbi moved for JMOL under Fed. R. Civ. P. 50(a)(1) against the breach of contract and of warranty claims, asserting, *inter alia*, that Smith's purported revocation of acceptance was invalid for two reasons: it was untimely because Smith did not reasonably inspect the tanks before revocation; and Smith continued selling the tanks after the 20 September 2001 revocation letter. JMOL was denied. Elbi renewed its JMOL motions at the close of all the evidence; they were again denied.

The jury found in favor of Smith for breach of both express warranty and contract, awarding $138,000 for each claim. (It awarded Elbi $45,000 for each of two counterclaims: negligent misrepresentation and detrimental reliance.) Because breach of contract and of warranty remedies are mutually exclusive, the district court required Smith to elect remedies. (It required the same of Elbi for its two awards. They are not at issue on appeal.) Smith elected breach of contract because it allowed an award of attorney's fees, which the jury set at $155,000.

Post-trial, Elbi moved for JMOL (Rule 50(b)) and new trial. In seeking JMOL, Elbi claimed, *inter alia*, insufficient evidence for a reasonable jury to find breach of contract, either by Elbi's

4

repudiation or by Smith's revocation.  In seeking a new trial, Elbi contended:  the evidence was insufficient to warrant the jury instruction on repudiation (by Elbi's not fulfilling its warranty); and this instruction resulted in an unjust outcome at trial.  The motions were denied.

## II.

As noted, Elbi does not appeal the breach of express warranty finding. Instead, it seeks to have the judgment based on breach of contract vacated and to have judgment entered for Smith based on breach of warranty.  Should this occur, Smith will *not* be entitled to the awarded attorney's fees.  (Elbi does *not* dispute such fees being awarded if there is breach of contract.)

Texas law forbids conflating breach of warranty and breach of contract:  "Under the [UCC], breach of contract damages are available for failure to perform, but not for delivery of nonconforming goods....  [There is] a definitive distinction between failure to conform and failure to deliver".  *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 897 (Tex. App. — Houston [1st Dist.] 2002, no pet.).  Thus, breach of contract damages are not available when a buyer accepts non-conforming goods.  In that instance, breach of warranty is the remedy. *See Southwestern Bell Telephone Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991).

5

Breach of contract remedies are available, however, to a buyer who, *inter alia*, properly revokes acceptance. ***Selectouch Corp. v. Perfect Starch, Inc.***, 111 S.W.3d 830, 834 (Tex. App. — Dallas 2003, no pet.). Section 2.608 of the UCC describes the conditions necessary for revocation:

> (a) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it ...
>
> (2) *without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.*
>
> (b) *Revocation* of acceptance *must occur within a reasonable time after the buyer discovers or should have discovered the ground for it....*
>
> (c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

TEX. BUS. & COM. CODE ANN. § 2.608 (Vernon 1994). "Unlike a claim of warranty that seeks a fix for defective goods or damages, a revocation seeks to put the buyer in the same position as if he had rejected the goods at the time of delivery." ***Neal v. SMC Corp.***, 99 S.W.3d 813, 816 (Tex. App. — Dallas 2003, no pet.).

A JMOL denial is reviewed *de novo*. *E.g.,* ***Echeverria v. Chevron USA Inc.***, 391 F.3d 607, 610 (5th Cir. 2004). We must affirm unless "there is no legally sufficient evidentiary basis for a reasonable jury['s]" verdict. FED. R. CIV. P. 50(a)(1); *e.g.,*

6

***Lane v. R.A. Sims, Jr., Inc.,*** 241 F.3d 439, 445 (5th Cir. 2001).
For such *de novo* review, we "review all of the evidence in the record ... [but] may not make credibility determinations or weigh the evidence". ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 150 (2000) (citations omitted). Likewise, "the evidence, as well as all reasonable inferences from it, are viewed in the light most favorable to the verdict". ***Lane***, 241 F.3d at 445.

In contending it did not breach its contract with Smith, Elbi maintains: Smith's 20 September 2001 revocation was invalid because, post-revocation, Smith continued to sell the Elbi tanks; and the revocation was untimely because it occurred more than a reasonable time after Smith should have discovered the grounds for it. In the alternative, Elbi contends there was no evidence adduced at trial for breach of contract based on Elbi's repudiating its agreement with Smith. Elbi maintains any evidence showing breach of warranty may not, as a matter of law, be used to support a repudiation claim because breach of warranty and breach of contract are legally distinct claims.

Smith responds that the evidence was sufficient for a reasonable jury to find revocation by Smith *and* repudiation by Elbi. For revocation, Smith maintains that, because the tanks' defect was latent, only destructive testing would have allowed Smith to discover the grounds for revocation before the tanks began failing in the field. For repudiation, Smith maintains Elbi's

7

warranty was a term of the contract between the parties, and Elbi repudiated that contract when it refused to honor its warranty. In sum, Smith contends the evidence was sufficient for a reasonable jury to find breach of contract (allowing Smith to recover attorney's fees). (Because there was sufficient evidence for a reasonable jury to find Smith properly revoked acceptance of the tanks, we need not reach the repudiation issue.)

## A.

For the first of its two bases for challenging the revocation, Elbi maintains it is invalid because, following Smith's 20 September 2001 letter, Smith sold 75 of the 14,400 Elbi tanks. Smith responds that those sales were "de minimus" and "inadvertent" and do not invalidate its revocation.

Generally, a buyer revoking goods must discontinue their use or sale; but "continued use of non-conforming goods does not, in all cases, waive the revocation of acceptance". *Deere & Co. v. Johnson*, 271 F.3d 613, 619 (5th Cir. 2001) (applying Mississippi UCC). The Texas UCC states: a buyer who revokes acceptance of non-conforming goods "has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller." TEX. BUS. & COMM. CODE

8

ANN. § 2.711(c) (referring to TEX. BUS & COMM. CODE ANN. § 2.706). There is no dispute Smith paid for the Elbi tanks it received.

As the Fourth Circuit noted: "Post-revocation use will not invariably cancel revocation. The issue is determined on a case by case basis, with the reasonableness of post-revocation use being the underlying consideration, taken in conjunction with a consideration of all the other elements necessary to effect a justifiable revocation". **Bellsouth Telesensor v. Information Systems & Networks Corp.**, 65 F.3d 166 (Table), 1995 WL 520978 at *6 (4th Cir. 1995) (holding a "de minimus" use of revoked goods did not invalidate revocation of entire batch). "[C]ontinued use [of revoked goods] will not necessarily undo a claimed revocation, particularly where the seller, after being notified of the buyer's revocation, does not respond or contact the buyer to arrange for return of the goods...." 14 WILLISTON ON CONTRACTS § 40:30 (4th ed. 2000) (The combined jury instruction/interrogatory for breach of contract described when revocation is proper and stated: "[A] buyer's attempted revocation of its acceptance of goods is rendered invalid where, following the attempted revocation, the buyer continues to sell such goods to third parties".)

Smith notified Elbi of its revocation in the 20 September 2001 letter and stopped selling the Elbi tanks, except for 75 of them. There was sufficient evidence for a reasonable jury to decide that

the inadvertent *de minimus* sale of 75 tanks after the September letter did *not* invalidate the revocation.

B.

In claiming the revocation was untimely, Elbi maintains Smith should have physically tested the tanks upon receipt and, therefore, should have found the defect in the interior coating before selling the tanks. Accordingly, Elbi contends: contrary to UCC § 2.608, Smith's 2001 revocation was not made "within a reasonable time" after it should have discovered the defects. Smith responds: its visual inspection of the tanks upon receipt was reasonable testing; it was not obliged to destroy new products to discover latent defects; and, because visual inspection could not identify the problem with the interior coating, its 2001 revocation was timely because it revoked promptly after it learned from its customers of the tanks' latent defects.

"[W]hether the buyer has complied with the requirements of § 2-608 in giving adequate notice of revocation of acceptance is a question for the trier of fact." *Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 735 F.2d 177, 181 (5th Cir. 1984). Again, revocation must occur "within a reasonable time after the buyer discovers or should have discovered the ground for it". TEX. BUS. & COM. CODE ANN. § 2.608(b). "The words 'reasonable time' as used in section 2.608(b) in and of themselves express the existence of a fact." *Purnell v. Guaranty Bank*, 624 S.W.2d 357, 359 (Tex.

10

App. — Dallas 1981, writ ref'd n.r.e.).  Accordingly, it was for the jury to decide:  whether Smith acted reasonably in not conducting destructive testing; and whether its  revocation was timely because visual inspection alone could not reveal the latent defect.

Smith adduced evidence that it did not conduct destructive testing upon receipt of the new Elbi inventory because:  the Elbi tanks had already passed the pressure test administered before the contract was made; and Smith knew of no other needed test that called for cutting open the new tanks.  According to Smith, because prior testing did not reveal the defect, it timely revoked when it notified Elbi of the defect within a reasonable time after Smith discovered it.

Viewing the evidence in the requisite light most favorable to the verdict, there was sufficient evidence for a reasonable jury to find Smith:  (1) reasonably decided not to conduct destructive testing; and (2) revoked acceptance within a reasonable time after discovering the latent defect via its customers.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*