United States Court of Appeals
Fifth Circuit

**F I L E D**

May 14, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 05-20807

)))))))))))))))))))))))))))

JEANETTE GOODMAN, Individually and as administratrix of the
estate of Michael W. Goodman, Deceased

                    Plaintiff - Appellant - Cross-Appellee

    v.

HARRIS COUNTY, ET AL

                    Defendants

HARRIS COUNTY; ROBERT ECKELS, Harris County Judge; EL FRANCO
LEE, Harris County Commissioner; STEVE RADACK, Harris County
Commissioner; JERRY EVERSOLE, Harris County Commissioner;
SYLVIA GARCIA, Harris County Commissioner; RON HICKMAN,
Harris County Precinct 4 Constable; TERRY ASHABRANNER,
Deputy Constable; DREW CARTER, also known as Andrew Carter

                    Defendants - Appellees

TERRY ASHABRANNER, Deputy Constable

                    Defendant - Appellee - Cross-Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 4:03-CV-4198

_____

Before DAVIS, DENNIS and PRADO, Circuit Judges.

PER CURIAM:[*]

_____

    [*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT

This case concerns the fatal shooting of Michael Goodman ("Goodman") by Defendant Terry Ashabranner ("Ashabranner"), a deputy constable in Harris County. Plaintiff Jeanette Goodman ("Plaintiff" or "Ms. Goodman"), Goodman's mother and administratrix of Goodman's estate, brought numerous claims against Ashabranner, Harris County, and other Harris County officials as a result of the shooting. The defendants moved for summary judgment, and the district court granted their motion in part, leaving only the excessive force claim against Ashabranner. Plaintiff and Ashabranner appealed. For the following reasons, we dismiss both appeals for lack of jurisdiction.

## I. FACTUAL BACKGROUND

As an initial matter, we note that this case is unusual in that there is only one surviving witness to the events at issue--Ashabranner. As a result and unless noted otherwise, the following description of facts comes entirely from the affidavit of Ashabranner.

On the night of April 14, 2002, Ashabranner was on duty as a K-9 unit in the Precinct 4 Patrol Division. He was driving a marked patrol vehicle, equipped with overhead blue and red emergency lights, and was wearing a duty belt and his officer's uniform (a polo shirt with a badge embroidered on it). Around the 13800 block of Kuykendahl Road, Ashabranner passed Goodman,

RULE 47.5.4.

2

who was riding a bicycle on the wrong side of the road.  The bicycle did not have on it the lights required by Texas Transportation Code § 551.104 for nighttime operation.  After swerving to avoid Goodman, Ashabranner decided to stop Goodman and warn him that his actions were dangerous.

Ashabranner drove alongside Goodman and tried to get Goodman's attention, but Goodman did not respond.  So, Ashabranner pulled over and got out of his car to talk to Goodman.  According to Ashabranner, Goodman got off his bike, but still made no response and would not make eye contact.  Ashabranner states that he observed "a tool or object of some type" in Goodman's right rear pants pocket.  Ashabranner believed the object was metal and that it posed a threat to his safety, so he decided to frisk Goodman.  Goodman then hit or pushed Ashabranner to the ground, pushed the bicycle through a nearby barricade, and rode away.  Ashabranner yelled at Goodman to stop and threatened to release his K-9 Nero if he did not stop.  Goodman continued to flee, so Ashabranner released Nero to apprehend Goodman while Ashabranner followed on foot.

When Ashabranner caught up with them, Goodman was lying in a puddle of water and was holding Nero's mouth and nose underwater while yelling, "I'm gonna kill your dog, I'm gonna kill your dog!"  Ashabranner responded to Goodman that he would call off Nero if Goodman would release him, but Goodman did not.  Ashabranner knelt down, grabbed Goodman from behind, and pulled

back, lifting Nero's head out of the water.  Ashabranner noticed at this time that Goodman was bleeding, likely from dog bites.  Goodman eventually released Nero.  Ashabranner states that Goodman then pushed him down with his left hand and "reached back with his right hand and appeared to be drawing or pulling the weapon or object" that was in his right rear pants pocket.  Believing he was in danger of serious bodily injury or death, Ashabranner pulled out his own firearm and shot Goodman three times.

Ashabranner immediately radioed the Precinct 4 dispatcher to request backup and medical assistance.  Ashabranner remained with Goodman, but did not handcuff him or attempt any first aid.  Deputy Constable Steve Cupit ("Cupit") arrived shortly thereafter.  He noted that Goodman was attempting to turn on his left side, at which time Cupit observed a pair of pliers in Goodman's right rear pants pocket.  Goodman was taken by Life Flight to a nearby hospital where he was pronounced dead.

Plaintiff disputes Ashabranner's version of events, although her ability to do so is limited due to the fact that she was not present at the shooting.  In support of her belief that Goodman did not pose a serious threat to Ashabranner, she claims that Goodman had received a gun shot wound to his dominant right arm less than four months prior to the incident in question and had almost no use of his right arm.  Ms. Goodman claims that her son was very clumsy as a result of having to use his left arm and

4

certainly could not have overpowered a deputy.

## II. PROCEDURAL HISTORY

Ms. Goodman filed suit in Harris County Probate Court #1 on September 12, 2003, against Harris County; Harris County Judge Robert Eckels; Harris County Commissioners El Franco Lee, Steve Radack, Jerry Eversole, and Sylvia Garcia; Constable Ron Hickman; and Ashabranner (collectively, "Defendants"). The causes of action included claims of excessive force, failure to train, illegal arrest, and illegal seizure in violation of the Fourth and Fourteenth Amendments and brought pursuant to 42 U.S.C. § 1983; violations of due process and equal protection under both the Texas and United States Constitutions; wrongful death and survival actions brought pursuant to sections 71.002 and 71.021 of the Texas Civil Practice and Remedies Code; and common law negligence. Defendants removed the case to federal court on October 7, 2003.

Plaintiff later filed an amended complaint which added as defendants Texas Ranger Andrew Carter and the Texas Department of Criminal Justice ("TDCJ"). Plaintiff also added causes of action under the Texas Tort Claims Act ("TTCA"), TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (Vernon 1997 & Supp. 2006), against all Defendants. Carter, the TDCJ, and Plaintiff reached an agreed stipulation of dismissal with prejudice on October 14, 2004. The remaining Defendants filed a motion for summary judgment on

December 15, 2004, and on August 26, 2005, the district court granted summary judgment on all claims except for the excessive force claim against Ashabranner.

Plaintiff filed an appeal on September 9, 2005. While her notice of appeal was not specific to any particular claim, she has only briefed before this court (1) the TTCA claim against Harris County; (2) the failure to train claim against Hickman; and (3) the failure to provide immediate life-saving care claim against Ashabranner. Ashabranner cross-appealed the district court's decision that he was not entitled to summary judgment on Plaintiff's excessive force claim on the basis of qualified immunity.

### III. DISCUSSION

A.   Ashabranner's Appeal

We turn first to Ashabranner's appeal, in which he asserts that the district court erred when it denied him summary judgment on the basis of qualified immunity for Plaintiff's excessive force claim. Although interlocutory orders are typically not immediately appealable, the denial of qualified immunity is immediately appealable under the collateral order doctrine to the extent the decision turns on an issue of law. Gobert v. Caldwell, 463 F.3d 339, 344 (5th Cir. 2006); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) (classifying the denial of qualified immunity, to the extent it turns on an issue of law, as

a "final judgment" under 28 U.S.C. § 1291).

Our jurisdiction over and scope of review of such appeals is limited, however, to issues of law. See Gobert, 463 F.3d at 344; see also Kinney v. Weaver, 367 F.3d 337, 346-47 (5th Cir. 2004) (en banc). We, therefore, lack jurisdiction to the extent Ashabranner challenges the district court's determination that the fact issues described in the summary judgment order are *genuine*. See Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001); see also Reyes v. City of Richmond, 287 F.3d 346, 351 (5th Cir. 2002). Ashabranner may challenge the *materiality* of the fact issues identified by the district court, but the presence of a genuine issue of material fact precludes us from exercising jurisdiction. See Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001). Therefore, we must accept Plaintiff's version of facts as true and review de novo the purely legal question of whether the district court erred in concluding as a matter of law that Ashabranner is not entitled to qualified immunity on that set of facts. See Gobert, 463 F.3d at 345; see also Reyes, 287 F.3d at 351 (noting that a defendant challenges materiality when he contends that "taking *all* the plaintiff's factual allegations as true[,] no violation of a clearly established right [i]s shown." (internal citations and quotation marks omitted)).

1.   **Qualified Immunity**

Ashabranner has asserted the defense of qualified immunity to Plaintiff's claim that he used excessive force when he shot Goodman. The defense of qualified immunity shields government officials such as Ashabranner from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. Wallace v. County of Comal, 400 F.3d 284, 289 (5th Cir. 2005). The qualified immunity analysis is a two-step inquiry. Michalik v. Hermann, 422 F.3d 252, 257 (5th Cir. 2005). First, the court must decide whether the plaintiff has alleged a violation of a clearly established constitutional right. Id.; see also Siegert v. Gilley, 500 U.S. 226, 231-32 (1991). A right is clearly established when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000) (internal citations and quotation marks omitted). If there is no constitutional violation, the inquiry ends. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, however, the plaintiff has alleged a violation of a clearly established right, the court must then determine whether the defendant's conduct was objectively reasonable under the law at the time of the incident. Michalik, 422 F.3d at 258.

In the summary judgment context, a government official need only plead qualified immunity, which shifts the burden to the

8

plaintiff.  Id. at 262.  The plaintiff must then rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that a genuine issue of material fact exists regarding the reasonableness of the official's conduct.  Id.  We now consider whether the district court correctly ruled that Plaintiff met this burden.

## 2.   Analysis

Under the first step in the qualified immunity analysis, Plaintiff must allege that Ashabranner violated a clearly established constitutional right.  Here, Plaintiff has alleged that Ashabranner violated Goodman's rights under the Fourth and Fourteenth Amendments when Ashabranner used excessive force to apprehend Goodman.

An excessive force claim requires the plaintiff to demonstrate (1) an injury; (2) resulting directly and only from the use of force that was excessive to the need; and (3) the force used was objectively unreasonable.  Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004).  It is objectively unreasonable for an officer to use deadly force unless he has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.  Id. at 399 (citing Tennessee v. Garner, 471 U.S. 1, 3 (1985)); see also Ballard v. Burton, 444 F.3d 391, 402 (5th Cir. 2006).  In this case, Plaintiff claims that Ashabranner's use of

deadly force against Goodman was objectively unreasonable because Goodman, due to his physical limitations, did not pose a significant threat of death or serious physical injury, as claimed by Ashabranner. Plaintiff has, thus, alleged the violation of a clearly established constitutional right. See Bazan, 246 F.3d at 490 (finding similar allegations sufficient to satisfy first step in qualified immunity analysis).

We, therefore, move to the second step in the qualified immunity analysis, which requires us to determine whether Ashabranner's conduct was objectively reasonable under the law existing at the time. See Michalik, 422 F.3d at 258. Ashabranner asserts that his conduct was objectively reasonable because Goodman appeared to pose a significant threat of death or serious physical injury to Ashabranner when Goodman reached for the metal object in his back pocket after pushing Ashabranner down. On appeal, Ashabranner claims that Plaintiff has not produced any evidence to contradict Ashabranner's own statement of the facts leading to the shooting.

As previously noted, this case is somewhat unusual in that the only surviving witness to the incident in question is Ashabranner, which makes it difficult for Plaintiff to create a genuine issue of material fact. This court has, however, dealt with such a situation before in Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481 (5th Cir. 2001). In Bazan, state trooper Raul Vargas confronted a car containing Leonel Bazan and several

10

other individuals. Id. at 483. After interacting with Vargas for several minutes, Bazan fled into a field. Id. at 483-85. Vargas pursued him, a scuffle ensued, and Vargas shot and killed Bazan. Id. at 485-86. On appeal, this court affirmed the district court's denial of qualified immunity at the summary judgment stage. In so doing, we noted the lack of forensic evidence and expert opinions to back up Vargas's version of events, such as the lack of evidence that Vargas's hand was injured despite his contention that Bazan bit it so hard Vargas thought he might lose some fingers; the lack of a head wound to Vargas or blood on his flashlight despite his contention that Bazan had beaten him about the head with the flashlight; the lack of evidence of a scuffle in the field; and the lack of expert testimony regarding the distance and angle of the gunshot. Id. at 492-93. We also took into account the discrepancies between Vargas's description of the events prior to Bazan's flight and the descriptions of other witnesses. Id. at 493.

Thus, in Bazan, this court looked to all the surrounding circumstances to see if they supported the officer's story. Other circuits have taken this same approach, examining the surrounding circumstances and forensic evidence to determine whether material fact issues exist. See Blossom v. Yarbrough, 429 F.3d 963, 968 (10th Cir. 2005); Hernandez v. Jarman, 340 F.3d 617, 623-24 (8th Cir. 2003); O'Bert ex rel. O'Bert v. Vargo, 331 F.3d 29, 38-40 (2d Cir. 2003); Garvin v. Wheeler, 304 F.3d 628,

11

634 (7th Cir. 2002).  As stated by the Second Circuit, in cases where the officer is the only surviving witness, "the court must . . . consider circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably."  O'Bert, 331 F.3d at 37 (internal citation and quotation marks omitted).

In its opinion below, the district court determined that there was a genuine issue of material fact as to whether Ashabranner's use of deadly force was objectively reasonable. The district court specifically cited Ms. Goodman's statements that Goodman had almost no use of his right arm and was very clumsy with his left arm.  As a result, the district court found that a fact issue existed as to whether Goodman could have taken the threatening actions alleged by Ashabranner.  As noted above, we cannot consider on interlocutory appeal the district court's determination that these fact issues are genuine.  See Bazan, 246 F.3d at 490.

Accepting these fact issues as genuine, we must also draw the conclusion that they are material.  Ms. Goodman's evidence, if believed, casts doubt on Ashabranner's claim that Goodman overpowered a police dog, pushed Ashabranner to the ground on at least two occasions, and reached for his back pocket.  Because Goodman's actions, as alleged by Ashabranner, provide the justification for Ashabranner's decision to shoot, whether

12

Goodman was, in fact, physically capable of taking and did take those actions is indeed material.  Consequently, there is a genuine issue of material fact as to the second prong of the qualified immunity analysis--whether Ashabranner's use of force was objectively reasonable because he believed Goodman posed a significant threat of death or serious physical injury.  Therefore, because there is a genuine issue of material fact, we lack jurisdiction over Ashabranner's interlocutory appeal and must dismiss it.  See id.

B.    Ms. Goodman's Appeal

Ms. Goodman appeals the district court's decision to grant Defendants' motion for summary judgment on some of her claims.  Defendants assert that this court lacks jurisdiction over Ms. Goodman's interlocutory appeal because the district court has not entered a final judgment, as the summary judgment order did not resolve all of the claims in this case.  Ms. Goodman's counsel conceded the lack of jurisdiction at oral argument, and we agree that we are without jurisdiction to hear Ms. Goodman's appeal.  See 28 U.S.C. § 1291; Marshall v. Kansas City S. Ry. Co., 378 F.3d 495, 499 (5th Cir. 2004) (per curiam) ("Generally, all claims and issues in a case must be adjudicated in the district court, and a final judgment or order must be issued, before our jurisdiction can be invoked under § 1291.").  Therefore, we dismiss Ms. Goodman's appeal for lack of jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, we conclude that we lack jurisdiction over both appeals and DISMISS them.

DISMISSED.