**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 9, 2009

Charles R. Fulbruge III
Clerk

No. 07-20816

JEANETTE GOODMAN, Individually and as administratrix of the estate of
Michael W Goodman Deceased

Plaintiff-Appellant-Cross-Appellee

v.

HARRIS COUNTY; ROBERT ECKELS, Harris County Judge; EL FRANCO
LEE, Harris County Commissioner; STEVE RADACK, Harris County
Commissioner; SYLVIA GARCIA, Harris County Commissioner; RON
HICKMAN, Harris County Precinct 4 Constable

Defendants- Appellees

TERRY ASHABRANNER, Deputy Constable

Defendant-Appellee-Cross-
Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:03-CV-4198

Before WIENER, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge.

This civil suit arises from the fatal shooting of Michael Goodman
("Michael") by Harris County, Texas, Deputy Constable Terry Ashabranner
("Ashabranner"). Jeanette Goodman ("Goodman"), Michael's mother, appeals

from the district court's grant of summary judgment in favor of Harris County and Constable Ron Hickman ("Hickman") on her Texas Tort Claims Act ("TTCA") causes of action, and her 42 U.S.C. § 1983 claims. Ashabranner appeals from the jury verdict which awarded $5 million to Michael's estate. For the reasons set forth below, we affirm.

## FACTS AND PROCEEDINGS

During his patrol of a rural area of Harris County, Texas, Ashabranner attempted to stop Michael who was riding his bicycle on the roadway. The parties dispute what happened next. Ashabranner claims that Michael ignored him as he attempted to approach and warn him of the unsafe condition of riding on the wrong side of the road without a light. Then, Michael allegedly assaulted Ashabranner, and fled on his bicycle. What is not in dispute is that Ashabranner released his canine, Nero, who pursued Michael. Ashabranner asserts that he saw Michael reach for a shiny object[1] in his pant's pocket when he attempted to rescue Nero whom Michael was allegedly trying to drown in standing roadside water. Ashabranner ultimately shot Michael at close range, killing him.

Goodman, individually and as Administratrix of her son's estate, brought suit against eleven defendants alleging various federal and state law causes of action. Among these defendants, Goodman sued Harris County, Ashabranner's employer, and Hickman, Ashabranner's supervisor, seeking to hold them liable under the TTCA. The estate also raised several § 1983 claims against Harris County asserting deliberate indifference to formulating policies and training programs for its deputy constables in the use of deadly force, against Hickman for negligent supervision and training of Ashabranner, and against Ashabranner for excessive use of force. The defendants moved for summary judgment. The

---

[1] A pair of pliers was later recovered from the scene.

district court granted summary judgment on all but the § 1983 excessive use of force claim against Ashabranner. All other claims were dismissed. After an interlocutory appeal,[2] the case proceeded to trial on the sole individual-capacity claim against Ashabranner. The jury returned a verdict for Goodman, awarding $2 million in compensatory damages and $3 million in punitive damages.

Ashabranner appeals from the jury verdict and Goodman appeals from the grant of summary judgment. Goodman argues that: 1) Harris County and Hickman are liable under the TTCA, 2) Hickman was not entitled to qualified immunity for failing to train and supervise Ashabranner, and 3) Harris County is liable for its deliberate indifference to the need for training. Ashabranner appeals from the jury verdict, arguing that: 1) the evidence was insufficient to support the jury verdict and overcome his qualified immunity, 2) the punitive damages verdict should be reversed, 3) the district court clearly abused its discretion in admitting expert testimony regarding his mental condition, and 4) the district court clearly abused its discretion in refusing to submit Ashabranner's proposed interrogatory to the jury.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "We consider the evidence in a light most favorable

---

[2] Ashabranner appealed the district court's denial of summary judgment on the basis of qualified immunity on the excessive use of force claim. This court determined that it lacked jurisdiction to hear the appeal. *Goodman v. Harris County*, 239 F. App'x. 869, 872 (5th Cir. 2007) (unpublished). The same appeal also contained Goodman's claims that the district court erred in granting summary judgment in favor of the defendants. Her appeal was likewise dismissed on jurisdictional grounds. *Id.* at 874–75.

to [Goodman], the non-movant, but she must point to evidence showing that there is a genuine fact issue for trial" to survive summary judgment. *Richardson*, 434 F.3d at 332.

"In reviewing the sufficiency of the evidence to support a jury verdict in a civil action, we must affirm unless there is *no* legally sufficient evidentiary basis for the jury's verdict." *Lane v. R.A. Sims, Jr., Inc.,* 241 F.3d 439, 445 (5th Cir. 2001) (internal quotation omitted). In this analysis, "the evidence, as well as all reasonable inferences from it, are viewed in the light most favorable to the verdict." *Id.* We reverse a district court's denial of a motion for a new trial only when "there is a clear showing of an abuse of discretion. To show an abuse of discretion in this respect, the defendant must show an absolute absence of evidence to support the jury's verdict." *Foradoi v. Harris*, 523 F.3d 477, 498 (5th Cir. 2008).

The "granting or denying of a motion for a physical examination rests in the sound discretion of the trial court." *Coca-Cola Bottling Co. of P. R. v. Negron Torres*, 255 F.2d 149, 153 (1st Cir. 1958); *accord Bucher v. Karuse*, 200 F.2d 576, 584 (7th Cir. 1953). "This court reviews evidentiary rulings for abuse of discretion and will reverse a district court's ruling only if it affects a substantial right of a party." *Caparotta v. Entergy Corp.,* 168 F.3d 754, 755–56 (5th Cir. 1999). The party asserting error bears the burden of proving substantial prejudice. *McDonald v. Steward*, 132 F.3d 225, 232 (5th Cir. 1998). Recently, we have underscored this rule, noting that, "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous." *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007) (citation omitted).

We review a district court's decision to submit a proposed interrogatory to the jury for abuse of discretion. *Moody v. FMC Corp.*, 995 F.2d 63, 66 (5th Cir. 1993).

## DISCUSSION

### I.     Texas Tort Claims Act

Goodman argues that the district court erred in granting summary judgment in favor of Harris County and Hickman on her TTCA claims because, Goodman asserts, these arise out of the negligent and/or grossly negligent training and supervision of constables. Goodman seeks to hold Harris County and Hickman liable for claimed failures in their own right, not vicariously for Ashabranner's conduct.

The TTCA "creates a limited waiver of sovereign immunity." *Johnson v. Waters*, 317 F. Supp. 2d 726, 738 (E.D. Tex. 2004). Under the TTCA, "[a] governmental unit in the state is liable for: . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2). Harris County is a governmental unit. *See id.* § 101.001(3). The TTCA does not, however, include individuals under its definition of a governmental unit. *Id.* Individuals may not be sued under the TTCA as the act "does not govern suits brought directly against an employee of the State." *Huntsberry v. Lynaugh*, 807 S.W.2d 16, 17 (Tex. App.—Tyler 1991, no writ).

Furthermore, the TTCA does not apply to claims arising out of an intentional tort. TEX. CIV. PRAC. & REM. CODE § 101.057(2); *Waters*, 317 F. Supp. 2d at 739. Also excluded from the TTCA are allegations against a governmental unit arising out of the same conduct that formed the basis of the intentional tort claims against its employee. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).

5

The TTCA is also not the appropriate vehicle for claims of negligent failure to train or supervise. *Id.* at 580–81. Such claims are not within the purview of the TTCA because "a plaintiff must allege an injury resulting from the 'condition or use of tangible personal or real property'" and "information is not tangible personal property, since it is an abstract concept that lacks corporeal, physical, or palpable qualitites [sic]." *Id.* at 580.

Thus, the district court's dismissal of claims under the TTCA was proper because: 1) suits against individual state employees are not cognizable under the TTCA, *Huntsberry*, 807 S.W.2d at 17, and 2) failure to train or supervise is not a proper cause of action under the TTCA, *Petta*, 44 S.W.3d at 580.

## II. Section 1983 failure to supervise and train

### A. Hickman

Goodman renews her failure to supervise and train claim asserting that the district court erred in dismissing this cause of action against Hickman under 42 U.S.C. § 1983. Goodman argues that Hickman was liable for failing to train Ashabranner because it was this failure which resulted in the denial of Michael's constitutional rights.

Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Soc. Serv.'s of City of New York*, 436 U.S. 658, 690 n.55 (1978). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted).

In a personal-capacity suit, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* In such a suit, the official may "assert personal immunity defenses" such as qualified immunity. *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). The process of evaluating qualified immunity requires two steps: "[t]he first step is to determine whether plaintiff alleged a violation of a clearly established constitutional right" and "[t]he second step requires determining whether . . . the official's conduct was *objectively* reasonable under clearly established law existing *at the time of the incident*." *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis in original).

In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 912 (internal quotation omitted). To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)

(internal quotation omitted). Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005). Furthermore, "for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Robert v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (quotations and citation omitted). Moreover, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.*

Goodman does not specify whether her claims against Hickman arise in his official or personal capacity. Because official capacity suits are really suits against the governmental entity, Goodman's attempt to hold Hickman liable for failing to train and supervise Ashabranner, if in his official capacity, is subsumed within her identical claim against Harris County. Thus, her § 1983 claim against Hickman must be viewed as one asserted against him in his personal capacity if it is to survive independently.

As the district court determined, Goodman fails to set forth a § 1983 claim. Goodman has not shown that Hickman acted with deliberate indifference. Goodman admits that there was a policy on the use of deadly force and points to no pattern of violations or deficiencies in the training program. She merely states that some violations must have existed and these must have been due to a failure to train. This is not enough to carry her burden of showing deliberate indifference.

As Goodman's § 1983 claim fails because she has not shown deliberate indifference, we need not discuss the remaining prongs of supervisor liability. *Estate of Davis*, 406 F.3d at 382. For this same reason, an analysis of Hickman's defense of qualified immunity is unnecessary. Qualified immunity is only

applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity.

Thus, the district court did not err in granting summary judgment in favor of Hickman on Goodman's § 1983 claim.

## B. Harris County

Next, Goodman raises her § 1983 claims against Harris County. She seeks to hold Harris County liable for failing to adequately train and supervise Ashabranner in the use of deadly force. She asserts that, while Harris County had a policy in place with respect to deadly force, it brought forth no evidence that specialized training had been required or undertaken either for constables or canines.

Largely the same analysis and conclusions follow as outlined above with respect to Goodman's § 1983 claim against Hickman. As the Supreme Court has long held, we "require[] a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 U.S. at 403. Furthermore, "municipal liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation and alteration omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *Id.*

Goodman has failed to point to any policy or custom that lead to her son's death. She has also failed to set forth any intentional choice made by Harris County and shows no deliberate indifference on the part of Harris County to the need for policies and training. Rather, Goodman admitted that Harris County had training policies and procedures but asserted that the county provided no evidence that these policies were actually followed. As previously noted, the burden is on Goodman to show deliberate indifference. She has provided no

evidence with respect to training deficiencies. Goodman only speculates that the policies may not have been followed. This is insufficient for municipal liability.

Thus, the district court did not err in its grant of summary judgment in favor of Harris County.

## IV.    Sufficiency of the evidence

Ashabranner argues that the jury verdict should be overturned because, if Ashabranner's account of the night Michael died is to be believed, no constitutional violation occurred. As the sole surviving eye-witness to the incident, Ashabranner argues that Goodman can do no more than attack his credibility but can provide no contradictory evidence. He further asserts that an officer who later arrived on the scene corroborated his testimony that Michael had a shiny object in his pant's pocket and that this object may have looked like a weapon from Ashabranner's vantage point. Thus, he maintains that he was reasonable in his belief that Michael might pose a threat and the use of deadly force was necessary.

To establish a claim under § 1983 for excessive use of force, a plaintiff must first show that he was seized. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Next, he must show: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id.*

As the Supreme Court stated in *Graham v. Connor*, "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." 490 U.S. 386, 394 (1989). *Connor* held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395. Thus, "[d]etermining whether the force used to effect a particular seizure

10

is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. (internal quotation omitted). The determination of "reasonableness" under the Fourth Amendment is "not capable of precise definition or mechanical application . . . [but] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation omitted). The Court went on to explain that, "[a]s in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397.

An officer who faces suit based on an alleged § 1983 violation may raise the defense of qualified immunity. *Graham*, 473 U.S. at 166. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Connor*, 490 U.S. at 396.

Turning to the substance of the § 1983 excessive use of force claim before the jury, the parties do not dispute that Michael had been seized. Ashabranner also makes no claim that Michael's death was not an injury caused directly by his use of force. He only asserts that the use of force was reasonable under the circumstances. With respect to the defense of qualified immunity, Ashabranner also does not dispute that Goodman alleged a violation of a clearly established constitutional right—the use of excessive force in violation of the Fourth Amendment—arguing only that the use of force was reasonable and therefore did not violate the Constitution. Thus, with respect to both the § 1983 use of

force claim and the qualified immunity defense, the issue at hand is whether Ashabranner's conduct was reasonable and whether the jury had evidence on which to base its verdict that it was not.

Despite Ashabranner's forceful contentions that the jury had no evidence upon which to disbelieve his account of the shooting, his testimony faced numerous challenges. Ashabranner claimed that Michael pushed him and the two struggled in the mud, also noting that pictures from that night showed that his uniform was wet and soiled. Yet, forensic evidence from the scene indicated that Ashabranner's uniform was not muddied and footprints in the area were equally consistent with a scene trafficked by the response team that later arrived as with the altercation described by Ashabranner. Furthermore, Ashabranner's testimony that Michael pushed him and attempted to drown Nero was contradicted by medical evidence and witness testimony that Michael's right arm was "virtually useless" due to a gun-shot wound suffered only three months prior which had not yet healed. Michael also had severe lesions and bite-marks all over his body which were consistent both with protective wounds as with an attempt to drown Nero. While Ashabranner argued that he saw Michael reach for a shiny object in his right back pocket and a pair of pliers was later recovered from the scene, evidence that the mobility of Michael's right arm was limited contradicted this version of events. Further contradiction came in the form of the vantage point from which Ashabranner claimed to have observed the object. The jury heard testimony that it would have been impossible for Ashabranner to have seen anything from the claimed view-point. The jury also heard expert evidence that Ashabranner's approach to the incident was improper and correct tactics would have avoided the entire situation.

Because "[w]e accept all credibility choices that tend to support the jury's verdict" *United States v. Anderson*, 933 F.2d 1261, 1274 (5th Cir. 1991), it is clear that a reasonable jury could conclude that Ashabranner's use of force was

not reasonable under the circumstances known to him at the time of the incident. Ashabranner repeatedly asserts that his testimony, "if believed," would preclude recovery for Goodman but there is no requirement that the jury ignore all evidence to the contrary and rely on Ashabranner's version of events alone. In fact, we have long held that "juries are free to choose among all reasonable constructions of the evidence." *United States v. Charroux*, 3 F.3d 827, 831 (5th Cir. 1993) (internal quotation omitted). A reasonable jury could find that it was unreasonable for a constable to react with deadly force to a disabled suspect who was attempting to protect himself from the officer's canine. There was sufficient evidence to challenge Ashabranner's version of events and to find that Ashabranner was not entitled to qualified immunity as his conduct was unreasonable. *Bazan*, 246 F.3d at 490.

The threshold for reversing a jury verdict in a civil action requires a court to find that the jury's verdict has "*no* legally sufficient evidentiary basis." *Lane,* 241 F.3d at 445 (quotation omitted). The jury had ample evidence on which to base its verdict. Therefore, we decline to disturb the jury verdict.

## V.    Punitive damages award

Ashabranner argues that the jury's punitive damages award should be reversed. He lists this argument as one of the "issues presented for review" but fails to brief it. Because "claims . . . not briefed on appeal . . . [are] waived," Ashabranner has waived this claim. *Gates v. Tex. Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 438 (5th Cir. 2008).

## VI.    Expert testimony regarding Ashabranner's mental condition

Ashabranner seeks to overturn the jury verdict arguing that it was error to allow the psychological examination of his mental condition and that the district court abused its discretion by allowing Dr. Jay Tarnow ("Dr. Tarnow"), the psychiatrist who performed the evaluation, to testify. He argues that Dr. Tarnow's testimony was highly prejudicial, inflammatory, and irrelevant.

Ashabranner further maintains that this testimony went beyond the proper scope of expert opinion because Dr. Tarnow testified with respect to Ashabranner's veracity and credibility. Based on these assertions of error, Ashabranner seeks a new trial.

When a party's "mental or physical condition . . . is in controversy" the court may order that party "to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35. Such an order "may be made only on motion for good cause." *Id.*; *see also Schlagenhauf v. Holder*, 379 U.S. 104, 121–22 (1964). A party seeking to introduce expert testimony must show that: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702; *see also Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589–94 (1993). "When evaluating expert testimony, the overarching concern is whether or not it is relevant and reliable." *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007). With respect to the proper scope of expert testimony, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. Nevertheless, an expert may never render conclusions of law. *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996). Nor, may an expert go beyond the scope of his expertise in giving his opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (noting that expert testimony was properly rejected by the court because the "opinion of dishonesty goes beyond the scope of expertise.")

Ashabranner makes broad conclusory assertions that the district court should not have granted Goodman's motion for a psychiatric evaluation. As the district court pointed out, it allowed the evaluation to level the playing field because Ashabranner had indicated that he intended to prove what happened

on the night of the shooting through the use of psychological evidence of Michael's mental state. This is not an abuse of discretion.

Ashabranner's assertions of error with respect to Dr. Tarnow's testimony are likewise weak and, accordingly, fail. Ashabranner does not challenge Dr. Tarnow's qualifications or methodologies, asserting only that Dr. Tarnow's testimony was not relevant and went beyond his professional opinion. A review of the record reveals that Dr. Tarnow's testimony was both relevant and within the proper scope of expertise. Dr. Tarnow limited his testimony to noting his professional observations of Ashabranner. Those observations included a diagnosis that Ashabranner showed cognitive weaknesses, some short-term memory problems, and attention span limitations. Dr. Tarnow nowhere concluded or testified that, as a result of the deficiencies he observed, Ashabranner fabricated any or all of his testimony. Because Ashabranner's case was premised almost exclusively on his own testimony, whether Ashabranner suffered from any limitations that may have affected his ability to accurately recall the night Michael died was highly relevant.

The most damaging testimony offered by Dr. Tarnow was that he observed inconsistencies in Ashabranner's account of the night he shot Michael and that Ashabranner exhibited anger-management problems and impulsive behavior. Based on Ashabranner's own statements, Dr. Tarnow described Ashabranner's anger at being defied by Michael who allegedly refused to stop when Ashabranner approached. Dr. Tarnow then gave his medical opinion that, based on his psychological analysis, Ashabranner overreacted to Michael, saw Michael as a "bad guy," and precipitated the confrontation through impulsive actions. Dr. Tarnow merely recounted what Ashabranner had described and gave his medical opinion on the psychological underpinnings of those descriptions. This testimony was relevant because it helped the jury understand Ashabranner's view of Michael that night and aided in the determination of whether

Ashabranner's decision to shoot was objectively reasonable. Furthermore, Dr. Tarnow never opined that Ashabranner was lying but only presented the jury with the fact that he observed inconsistencies.

Even accepting Ashabranner's argument that some of Dr. Tarnow's testimony went beyond its proper scope, the error was harmless. *United States v. Achobe*, 560 F.3d 259, 268–69 (5th Cir. 2008) (noting that any error with respect to the admissibility of evidence was harmless given the amount of evidence produced). As previously outlined, the jury was presented with forensic, physical, and medical evidence that contradicted Ashabranner's account. Thus, it cannot be said that "[t]his is the unusual case where a new trial is needed because a full and fair presentation of the claims was impeded at trial, and substantial prejudice resulted." *Nichols v. American Nat. Ins. Co.*, 154 F.3d 875, 890 (5th Cir. 1998) (granting a new trial where erroneous evidentiary rulings so altered the course of trial as to deny a party a fair and impartial presentation of her case). Ashabrannar has failed to carry his burden of proving that he suffered substantial prejudice.

Thus, the district court's evidentiary rulings with respect to Dr. Tarnow were proper as the court did not abuse its discretion in allowing the testimony.

## VII. Jury instruction sought by Ashabranner

Ashabranner seeks a new trial because the district court refused to submit his proposed interrogatory to the jury. The interrogatory he proposed, Ashabranner argues, set forth the second prong of qualified immunity—whether no reasonable officer could have believed that the use of deadly force against Michael was lawful. While admitting that the district court instructed the jury on qualified immunity, Ashabranner argues that, by failing to set forth a specific interrogatory on the second prong of qualified immunity, the district court committed an abuse of discretion.

"In determining whether a jury instruction is erroneous, this court determines whether the charge as a whole is a correct statement of the law and whether it clearly instructs the jury on the law applicable to the facts." *United States v. Ibarra-Zelaya*, 465 F.3d 596, 607 (5th Cir. 2006). We look to the following factors in determining whether the jury instructions were proper: "(i) whether, when read as a whole and in conjunction with the general charge the interrogatories adequately presented the contested issues to the jury; (ii) whether the submission of the issues to the jury was 'fair'; and (iii) whether the 'ultimate questions of fact' were clearly submitted to the jury." *Barton's Disposal Serv. Inc. v. Tiger Corp.*, 886 F.2d 1430, 1435 (5th Cir. 1989) (citing *Dreiling v. Gen. Elec. Co.*, 511 F.2d 768, 774 (5th Cir. 1975)). Abuse of discretion is established if these factors are not met. *Id.* As previously noted, the defense of qualified immunity is a two-step inquiry: the allegation that a "clearly established constitutional right" was violated and the determination that "the official's conduct was *objectively* reasonable under clearly established law existing *at the time of the incident.*" *Bazan*, 246 F.3d at 490.

The jury was asked: "Do you find by a preponderance of the evidence that Defendant Deputy Constable Terry Ashabranner's use of force was clearly excessive to the need and was objectively unreasonable." The jury answered "Yes." Ashabranner sought the following interrogatory: "Do you find, from a preponderance of the evidence that no reasonable officer possessing knowledge of clearly established law and the information known by Deputy Ashabranner on April 14, 2002, could have believed that his use of force against Michael Goodman on April 14, 2002 was lawful?"

A plain reading of the jury instruction belies Ashabranner's assertion of error. The instruction asks whether the use of force was objectively unreasonable, the very requirement set forth in step two of the qualified immunity analysis—the step Ashabranner now argues that the district court

ignored. Furthermore, as Ashabranner admits, the district court instructed the jury on the defense of qualified immunity. Thus, when taken as a whole, it cannot be said that the district court failed to properly set the ultimate issues of fact before the jury.

The district court therefore did not abuse its discretion.

## CONCLUSION

The judgment of the district court is AFFIRMED.